# 17-CV-80865 MIDDLEBROOKS/BRANNON

FILED BY _____ D.C.

JUL 2 1 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B

UNITED STATES DISTRICT COURT
SOUTHERN DIVISION
WEST PALM BEACH, FLORIDA


REBECCA POTTER


   Plaintiff ,

_____/

v.

**DEMAND FOR JURY TRIAL**

1.   VIOLATIONS OF THE AMERICANS WITH ISABILITIES ACT (42 USC 12102)

2.   VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1964 (42 USC 1983, 1985, 1986)

3.   VIOLATIONS OF THE FAIR HOUSING ACT(42 USC 3601, 42 USC 3604)

4.   FLORIDA STATE STATUTES 760.20 - 760.60, 817.45(2)(A)

6.  VIOLATIONS OF  GRAMM-LEACH BILLEY ACT  (15 USC  6801)

7. RICO AND RACKETEERING AND CORRUPT ORGANIZATIONS ACT OF 1970 (18 USC 1962)

8.MOTION FOR STAY OF ALL STATE COURT ACTIONS AGAINST PROPERTY AT 1417 MICHIGAN DRIVE, LAKE WORTH, FLORIDA 33461

9. MOTION FOR PROTECTION OF PRIVATE PROPERTY

10.  MOTION FOR LEGAL ADVOCACY FORFAIR AND EQUAL ACCESS TO THE COURT FOR LEGAL REMEDY

**CAUSE OF ACTION FOR R.I.C.O. CONSPIRACY AND FRAUD OVERRIDES ROOKER-FELDMAN DOCTRINE**

FLORIDA BAR ASSOCIATION, a Florida corporation;
CITIZENS PROPERTY INSURANCE, LLC, a Florida corporation ; UNITED PROPERTY AND CASUALTY INSURANCE, LLC, a Florida Corporation; MERRILL LYNCH, LLC, a Delaware Corporation; PHH MORTGAGE SERVICES, a Delaware Corporation; SUNTRUST BANK, a Delaware Corporation;  CHASE BANK, a Delaware Corporation;  FLORIDA DEPARTMENT OF FINANCIAL SERVICES, a municipal entity;  FLORIDA DEPARTMENT OF INSURANCE; a municipal entity; FLORIDA CONSUMER PROTECTION BUREAU; a municipal entity;  FLORIDA DEPARTMENT OF AGRICULTURE; a municipal entity;  FLORIDA OFFICE OF INSURANCE REGULATION; a municipal entity;  FLORIDA OFFICE OF THE ATTORNEY GENERAL; a municipal entity;  PALM BEACH COUNTY CLERK SOF THE COURT, JOHN DOE 1-50 a municipal entity;    ATTORNEY NEIL JAGOLINZER, an Individual/business of unknown form;ATTORNEY MARK MAYNOR,an Individual; ATTORNEY JACK KRUMBEIN,an Individual; ATTORNEY  KEN SCHERER,  an Individual;  ATTORNEY CRAIG B. SALSBURG,  an Individual; STATE ATTORNEY PETER ANTONACCI, a municipal entity; STATE ATTORNY PALM BEACH COUNTY, a municipal entity; PALM BEACH SHERRIFF OFFICE,a municipal entity; JUDGE KATHERYN BRUNSON, an Individual of a municipal entity;JUDGE BARKDULL, an Inividual;  JUDGE FRANK CASTOR, an Individual of a municipal entity MAGISTRATE JOY B. SCHERER, an Individual of a municipal entity; MEDIATOR JUDGE COLTON, an individual of a municipal entity;

CHIEF JUDGE KATHLEEN KROLL, an individual of a municipal entity; CHIEF JUDGE PETER LE BLANC, a municipal entity; JUDGE MEENU SASSER, a municipal entity; BARBARA L. DAWICKE, a municipal entity ; ATTORNEY AMY BORMAN, a municipal entity;  DEBBIE HOWELLS; a municipal entity; ATTORNEYS SCHULER, HALVERSON, business of unknown form; DENNIS CIAGLO, an Individual; FAZZIO MOVING AND STORAGE, a business entity of unknown form; JULIE HERSHMAN, an Individual; RICHARD BRISCO, an Individual; US DEPARTMENT OF JUSTICE, a federal entity;  US DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, a federal entity;  GOVERNOR RICK SCOTT, a state entity; ATTORNEY GENERAL PAM BONDI, a state entity;  AGRICULTURE COMMISSONER ADAM PUTNAM, FLORIDA COMMISIONER OF DEPARTMENT OF GRICULTURE, a municipal entity;  FLORIDA JUDICIAL QUALIFICATIONS COMMISSION, a municipal entity;
JOHN DOE 1-500
MUNICIPALITY OF WEST PALM BEACH, FLORIDA, a municipal entity

_____/

DEFANDANTS

# I. COMPLAINT

Plaintiff, Rebecca Potter, brings this matter to the US District Court as a disabled citizen, member of a protected class, survivor of domestic violence and alleges as follows:

## II PRELIMINARY STATEMENT

1. This is an action for all damages and injunctive relief contained in state and federal law,  brought by Plaintiff against Defendants for violations of  42  USC 1983, 1985, 1986;42 USC 3601; 42 USC 3604; fss760.20 - 760.60, 817.545(2)(a); 15 USC 6801, 18 USC 1962; 42 USC 12101, FSS 626.9541

2. Plaintiff contends that these discriminatory actions, civil rights violations were violated by the Courts when Plaintiff sought redress of her injuries.

3.  The Court is used to create unnecessary emotional, psychological, physical and financial hardship to the female survivor and her property.

4.  Plaintiff contends that the above Defendants have conspired and have ignored Court rules, state rules, federal rules that ensure that all litigants have equal access to the Court for remedy of injury.

5  Plaintiff suffers from a disability caused by the abuse and trauma that prohibits full cognitive functioning when exposed to any aspect of the abuse and trauma. All manners contained in this complaint area result of the extended terror of leaving an abusive marriage and the discrimination faced by Plaintiff from Defendants.

6.  Plaintiff sought assistance from state and municipal entities to assist with remedy and was denied remedy and told she must file civil action in Court.

7.  Plaintiff is a victim of financial abuse and does not have the financial means to file an appeal, or pay for an attorney for assistance.

8.  Plaintiff's cognitive injuries prevent Plaintiff from representing herself in Court.

9.  Plaintiff was denied fair and equal access to the Courts.  The Defendants conspired to deny equal access to the Court.

10.  The ADAA, requires that all disabled litigants are provided equal access to private and government facilities. Victim Plaintiff is unable to litigate this matter due to her disability and has relentlessly sought legal assistance from private and title II funded entities. If Plaintiff were blind, she would need assistance to see court documents, Plaintiff requires legal assistance to seek remedy and redress of the crimes committed by Defendants.

11.     Defendants have conspired to injure and steal Plaintiff's assets, while colluding in financial crimes, knowing Plaintiff was a vulnerable adult.

12.  Plaintiff seeks monetary damages from Defendants as a result of the injures she sustained, actual damages, her property damages, professional damages and infliction of emotional duress for the above violations.

## III. JURISDICTION

13.  Jurisdiction of this Court arises under 47 USC 227 (b)(3) and supplemental jurisdiction exists for the state law claims pursuant to 28 USC 1367.

14.  Venue is proper pursuant to 28 USC 1391 b. Venue in this District is proper in that the Plaintiff resides here, the Defendant transact business here and the conduct complained of occurred here.

## IV. PARTIES

15.  Plaintiff Rebecca Potter(Potter) is a citizen of the United States, residing and doing business in this district.

16.  Defendant Florida Bar Association (FBA) is a corporation organized and existing under the laws of Florida , doing business in this District as an association to support, facilitate and coordinate the Florida legal industry. The organization trains and regulates the legal industry in Florida.

17.  Citizen's Property Insurance, LLC (Citizens) is a Delaware corporation which provides property insurance to Florida homeowners. It is known for shady practices toward the citizens of Florida.

18.  United Property and Casualty Insurance, LLC (UPC), is a Delaware Corporation providing insurance to Florida homeowners.

19.  Merrill Lynch, LLC, (Merrill) is a Delaware Corporation providing financial services to Florida citizens.

20.  PHH Mortgage Services, (PHH) is a New Jersey Corporation doing business in Florida.

21.  Sun Trust Bank, (ST) is a Delaware Corporation doing business in Florida.

22.  Chase Bank, (Chase) is a Delaware Corporation doing business in Florida.

23.  Florida Department of Financial Services (FDFS) is a state entity whose responsibilities include regulation of all insurance and financial industries in the state.

24.  Florida Department of Insurance, (FDI), is a state entity whose responsibilities include regulation of the insurance industry in Florida.

25.  Florida Consumer Protection Bureau (FCPB) is a state entity whose responsibility is to provide assistance to consumers who have been harmed by business practice in Florida.

26.  Florida Department of Agriculture, (FDA), is a state entity whose responsibility is to monitor the conduct of business in Florida.

27.  Florida Office of the Attorney General (FOAG), is a state entity whose responsibility is to protect victims of crime in Florida and ensure that victims have equal access to Florida Courts and redress of injuries.

28.  Palm Beach County Clerks of the Courts(PBCC) are municipal employees who are trained to ensure equal justice and equal access will be provided to Florida citizens.  They are to ensure that all rules and regulations are followed by the municipal employees.

29.  Attorney Neil Jagolinzer (Jagolinzer) is a private attorney who practices family law.  He represented Potter's former husband in family court.  He is sued in his individual and official capacities.

30. Attorney Troy Klein (Klein) is a private attorney who practices family law in Palm Beach County. He represented Potter in her divorce. He is sued in his individual and official capacities.

31. Attorney Mark Maynor (Maynor) is a private attorney who practices family law in Palm Beach County. He represented Potter in her divorce. He is sued in his individual and official capacities.

32. Attorney Jack Krumbein (Krumbein) is a private attorney who practices in the Orlando area. He represented Potter in her lawsuit against the banks and financial institutions. He is being sued in his individual and official capacities.

33. Attorney Ken Scherer, (Scherer) is a private attorney who practices in civil litigation in Palm Beach County. He represented both Potter's in their lawsuit against contractor Dennis Ciaglo.

34. Attorney Craig B. Salsburg, (Salsburg) is an attorney for the municipality of Palm Beach County Traffic Court. He is being sued in his individual and official capacity.

35. Attorney Amy Borman, (Borman) is an attorney for the clerk of Palm Beach County. She is being sued in her individual and official capacity.

36. State Attorney Peter Antonacci, (Antonacci) is a municipal employee. He is being sued in his individual and official capacity.

37. State Attorney Dave Arronberg, (Arronberg) is a municipal employee. He is being sued in his individual and official capacity.

38. Palm Beach County Sherriff Organization, (PBSO) is a municipal agency.

39. Judge Catherine Brunson (Brunson) is a municipal employee for Palm Beach County Courts. She is being sued in her individual and official capacities.

40. Judge Thomas Barkdull III (Barkdull) is a municipal employee for Palm Beach County Courts. He is being sued in his individual and official capacity.

41. Judge Frank Castor (Castor) is a municipal employee for Palm Beach County. He is being sued in his individual and official capacity.

4

42. Magistrate Joy B. Shearer (Shearer) is a municipal employee for Palm Beach County. She is being sued in her individual and official capacity.

43. Judge Roger B. Colton (Colton) is a municipal employee for Palm Beach County Courts. He is being sued in his individual and official capacity.

44. Chief Judge Kathleen Kroll (Kroll) is a municipal employee for Palm Beach County Courts. She is being sued in her individual and official capacity.

45. Chief Judge Peter Le Blanc (Le Blanc) is a municipal employee for Palm Beach County Courts. He is being sued in his individual and official capacity.

46. Judge Meenu Sasser, (Sasser) is a municipal employee for Palm Beach County Courts. She is being sued in her individual and official capacity.

47. Barbara L. Dawicke (Dawicke) is a municipal employee. She is being sued in her individual and official capacity.

48. Debbie Howells (Howells) is a municipal/state employee. She is being sued in her individual and official capacity.

49. Attorneys Schuler, Halverson are attorneys in Palm Beach County. They represented Potter in a lawsuit against her former husband for injuries.

50. Fazio Moving and Storage (Fazio) is a business of unknown form practicing in Palm Beach County. The company did not follow a court order and released items from storage without the consent of Potter.

51. Julie Hershman, an individual who works with family court attorneys to provide financial documents for family court litigants. She is being sued in her individual and official business capacity.

52. Richard Brisco is an an individual accountant who provided documents for Potter's family court case. He is being sued in his individual and official capacity.

53. Governor Rick Scott is governor of the state of Florida and responsible for oversight of the state insurance business regulations. He is being sued in his individual and official capacity.

5

54. Agriculture Commissioner Adam Putnam is the Department of Agriculture Commissioner. He is responsible for oversight of the state insurance business regulations. He is being sued in his individual and official capacity.

55. Attorney General Pam Bondi (Bondi) is the Attorney General for the state of Florida. She also is responsible for oversight of the state insurance business regulations. She is being sued in her individual and official capacity.

56. Florida Judicial Qualifications Commission, (FJQC) is a municipal entity responsible to ensure Judges follow the rule of law. The individual commissioners are being sued in their individual and official capacities.

57. United States Department of Justice (DOJ) is a federal entity responsible for investigation of complaints and oversight of Courts compliance to rule of law and non discrimination.

58. United States Department of Housing and Urban Development(HUD), is a federal entity that is responsible for oversight and regulation of compliance to federal laws and non discrimination of housing for vulnerable citizens.

59. Any other individual that will be identified later in the course of this litigation. The complaint will be amended to include any additional defendants who colluded and violated laws to injure Potter.


## V.  BACKGROUND

60. In December 2006, Potter consulted with Attorney Troy Klein because her husband had presented her with a post nuptial from her former husband, Kenneth E. Potter, Jr. Potter refused to sign the document and her husband began to escalate his emotional, financial, psychological abuse to physical abuse. Potter needed help and was told by police that she needed to call an attorney.

61. Former husband had been working with Attorney Neil B. Jagolinzer since October in a conspiracy to devise a fraud and swindle of Potter's assets. Former husband used Potter's credit report, private bank account information to obtain a

loan on a property owned with Potter's father through Chase Bank. Potter refused to sign and the violence and humiliation increased.

62. In December 2006 Potter sought the counsel of attorney Klein who told her she had no other option but to obtain a divorce. Attorney Klein was made aware that she was kicked off the property and had no place to live, her marital residence, which was damaged by 3 hurricanes was torn apart as the husband had claimed he had given all insurance funds to a contractor he had hired when Potter was out of state doing business.

63. Attorney Klein, did not obtain a protective order, a restraining order, nor provide a guardian ad litem, knowing that Potter also suffered from a cognitive disability. Potter asked him why he was not filing documents to protect her home and protect her. He replied that Potter needed to trust him and not complicate the matter. Potter asked to bring on an accountant and Klein disagreed with Potter's choice of accountant. Potter later discovered that this accountant was an outsider and would have accurately worked to protect Potter's financial interests.

64. Attorney Klein began to threaten to withdraw from the matter. He provided poor legal service and did withdraw. Potter could not understand why she could not get appropriate legal service from this attorney when he was paid.

65. Potter then hired attorney Mark Maynor. Attorney Maynor assured Potter that he would fight for Potter. Maynor also refused to work with account Potter wanted to hire and insisted that Potter use the services of Richard Brisco.

66. Potter informed Maynor and Brisco of her disability. Maynor would tell Potter that she needed to be at his office to meet with her and his staff claimed he was not there, when Potter saw him at the office. This all was done to increase the cost and expense for Potter.

67. Maynor then scheduled court for a day that Potter was on a cruise. Maynor filed a motion to withdraw from her case. When Potter returned from the cruise, Maynor told her that she had to be at a meeting at his office. When Potter came to the office, her ex, his attorney Neil Jagolinzer and his accountant Julie Hershman were at the office. Potter was so traumatized that she could not be in the same room. Potter remained in another office, suffering from extreme trauma. When

this trauma is triggered, Potter cannot effectively make cognitive decisions. Maynor and Brisco began to scream at Potter to tell her that she needed to sign, her doctor would be on vacation and could not appear at trail, the Judge wanted the case ended. They claimed that Potter would have a civil lawsuit against former husband and had sent her to attorneys Schuler and Halvorson across the hall from Maynor's office. Potter wanted her home fixed. Potter afraid and in fear signed the document. Defendants acted in a conspiracy to violate Plaintiff's right and damage her property.

68. Potter the next day asked Maynor to void the agreement as she was not able to cognitively process the document. Judge Brunson denied this. Potter was left with no funds, a damaged home that she needed to obtain a mortgage for.

69. Potter sought help from the  self help in the court house and filed a motion to vacate. Potter's husband refused to follow the agreement and Potter's home remained unprotected for over one year. Potter returned to self help and was told that she was not allowed to use their services because it was a post divorce matter. Potter presented evidence to the Court of the home being damaged, the former husband's refusal to follow the settlement agreement.

70. At one point, Potter hired an attorney who presented the fraud to the Court and the Court refused to assist Potter.  Former husband and accountants (Briscoe and Hershman) did not disclose the $42,000.00 dollar lien on the property by the contractor. Potter could not obtain a mortgage because of this and the property could not be protected. Potter had forced citizens and upc to provide checks and had discovered fraud. In this court hearing, Attorney Jagolinzer misrepresented to the Court the correct amount of the contractor lien.

71. In one Court proceeding before Magistrate Schearer, Potter could not be in the same room as former husband and appeared over the phone. Potter and former husband began a lawsuit against the contractor and the contractor had agreed to sign a settlement, Potter asked the attorney handling the case, Ken Scherer to release the funds so that the home could be repaired, he then threatened to withdraw and Potter insisted that the home be protected. Magistrate Schearer gave settlement authority to former husband without knowledge and consent of Potter. Former husband then refused to get an attorney.  When he finally got an attorney.

8

This court official gave the power back to an abuser whose actions should have indicated to the Court that he acted in "bad faith". The contractor filed bankruptcy and former husband settled for a minimum amount.

72. Potter had to take out a mortgage on the property she owned with her father from Chase Bank. The mortgage was high, but Potter felt that she would be able to pay it off when the settlement conditions were met. Potter was never able to pay off this high interest loan. Chase Bank has acted in bad faith to obtain the mortgage and violated many state and federal laws. Potter is not able to afford legal representation and unable to proceed due to her cognitive disabilities in the Court. Potter has evidence of the "bad faith " actions of this business. Her former husband was able to go to the bank and obtain a mortgage in Potter's name without her consent, obtain all property records from this bank without her consent.

73. Potter meanwhile attempted to contact the property insurers and ask about the insurance proceeds. During the divorce  she asked the adjuster to keep her informed and records will show that he told her to contact her former husband for the results. Potter demanded all records from  Citizens and UPC and was told she was not a policy holder. Potter requested assistance from Merrill Lynch the Mortgage holder and was denied assistance.

74. Potter then requested that the Court sanction attorney Jagolinzer for his testimony of incorrect facts to the tribunal. Nothing was done by Magistrate Schearer.

75. Meanwhile, Potter was accused of not paying a $1 toll booth fine. She was stopped in her vehicle and told her license was suspended. Potter went to traffic court and was told all would be dismissed if she paid fines and reinstated her license. Potter did this. When she returned to traffic court in Palm Beach County, she was told that she needed to sign a statement of guilt. Potter refused and was given a court date. Potter had been trying to get a court date for months from family court requesting sanctions on attorney Jagolinzer. Within  a few days of being given the court date by traffic court to appear at the main courthouse. Potter received a court date in family court at the same time as the traffic court hearing.

76. Potter then challenged the toll booth violation with Sun Pass. Sun Pass discovered that there were two address for Potter. Potter had never changed her driver's license or address with the state. The toll fine was dismissed.

77. Potter called traffic court and spoke with a clerk named, Theresa. Potter explained the double court date and was told that she needed to write a letter to the traffic judge, Frank Castor and let him know she would not be able to make it to the hearing that the matter was dismissed by Sun Pass and that you wanted to clear the matter. Potter did this and attended the family court hearing. According to Court rules, it was the responsibility of the clerk of traffic court to report this matter to case management. The clerk did not and placed this burden on Potter. Judge Castor decided to ignore my letter, the proof that the matter was dismissed and issued a warrant for my arrest for not showing up to court. PBSO came to Plaintiff's residence the next day to arrest her. Plaintiff paid her bond. Potter then began to file complaints with Chief Judge Colbath, all state representatives. Potter filed a complaint with the Judicial Qualification Commission. When Potter returned to traffic court, she was told the matter was just gone. Potter has recently learned the matter is still on her record. Potter has lost job opportunities because of this.

78. Potter was able to obtain an attorney on contingency to prosecute citizens, upc, Sun Trust, Merrill Lynch, PHH. The attorney was overwhelmed and withdrew from the matter. Judge Sasser claimed Potter could litigate on her own. Potter even missed a court hearing because of her cognitive disability and came a day late. Potter should never have been expected to litigate this matter.

79. Potter has requested assistance from Florida Division of Insurance, Florida Department of Agriculture, Florida Department of Financial Services, Attorney General Pam Bondi, Florida Department of Agriculture, Governor Rick Scott. These state entities are responsible to regulate the insurance and financial industries in Florida. They did not assist.

80. Potter requested assistance from the Palm Beach County Lawyer Referral Service. Potter made numerous phone calls, to no avail.

81. Potter has reported the violations to State ADA Coordinator Debbie Howells, only to be ignored and humiliated, blamed and to no avail.

82. Potter has asked for a grand jury to assist her in prosecuting these municipal violations and is ignored by the State Attorneys listed above.

83. Potter was told to contact Legal Aid and met with an attorney who would not help in the matter, he again told Potter she could litigate the matter herself. Potter has an invisible disability which is not revealed until she is triggered by her past trauma. Potter looks capable, but powerful changes occur in her brain which limit her ability to cognitively function when triggered.

84. Potter then discovered Florida State Statue requires insurers to pay when an abuser destroys property when the insurers have committed discrimination. i.e.. not pay claims, tell Potter she is not on the policy, refuse to coordinate with Potter, allow all proceeds to be converted to Potter's former husband , including making a check solely payable to the former husband without including Potter. Potter again requested assistance from all state agencies and was refused help. Citizen's mediator set a mediation and did not tell Potter of this mediation. Potter learned of it through an audit of DFS records. Potter informed state insurance commissioner, Kevin McCarty and nothing was done to rectify this filing of false documents into public record.

85. Court rules also dictate that Potter should been allowed a guradien ad litem to assist with any court dates or mediation with her former husband. She should not have been forced to mediate with her former husband or settle and sign an unprotected document without this assistance.

86. Florida Bar Association has a duty to investigate these violations by court officers and has refused to assist Potter. When Potter filed a complaint against Jagolinzer, she was told her complaint was too long. Potter should have never been held to the legal standard of an attorney. FBA has denied equal access to the Court as a result of non investigation of the crimes of court personnel. FBA has not regulated these attorneys despite numerous complaints by Potter. FBA is also responsible for training judges and attorneys to protect victims of domestic violence. I am a result of this training. There is a simple check list that will

11

identify a vulnerable litigant, I am sure it was not used in my case. All complaints against attorneys involved to the Florida Bar have been ignored in a cover up conspiracy to protect the Divorce Industry Enterprise.

87. Potter's property has been in a foreclosure action. Potter has sought legal assistance and has not been helped. Potter is unable to defend herself in court as a result of all the legal trauma by rule violations and discrimination, have left her in terror of the Court System. She is unable to represent herself in any Court without a dedicated skilled attorney. The Court by it crimes, have complicated the matter to a point beyond the capabilities of many legal professionals.

88. Potter has filed numerous civil rights violations to the Department of Justice. Potter has not had their assistance.

89. The Court, state agencies receive Title II funds to ensure that a disabled survivor of abuse will not be abused by court personnel, insurance and financial institutions. The Title II funds require reasonable accommodations. It is reasonable to provide legal assistance to a traumatized survivor of abuse and litigation abuse.

90. Potter has filed a complaint with HUD and has not received assistance.

91. Potter requires competent legal assistance to fairly litigate this matter in federal court. All agents and agencies need to be held accountable for their crimes. This is a reasonable accommodation for Potter. This has not been provided to Potter.

92. PBSO refuses to file a financial crimes report, so I cannot present this case to the state attorney. I have sent these complaints to them and they have not responded.

93. The State ADA Coordinator responded to my complaint by victim blaming, which is common for an untrained professional. It is the responsibility of the FBA to ensure all supervisory personnel are trained in domestic violence in the state and federal courts. This training has not been applied to the actions of court personnel in Plaintiff's litigation, thereby creating further injuries.

94.  When people ask why an abused spouse does not leave, I always reply because it is much more dangerous to go to family court against your abuser.  This should not have happened.

95.  Potter lost money from the contractor lawsuit because former spouse would not agree to the settlement in order to punish and further damage the home.

96.  UPC and Citizens were aware of this intentional destruction of the marital property and did not settle the matter in a timely manner.

97.  When municipal and private business conspire to harm an abuse victim, it is RICO violations and a conspiracy to deny civil rights.

98.  PHH converted all insurance funds to the use of the former husband.  They then committed mortgage fraud by not reporting that these funds were converted and not applying the funds to the mortgage or to repair damages to the home, in addition to denying Potter equal benefits.

99.  Former husband's brother works for Merrill Lynch which was the mortgage holder.  He signed one converted check.

100.  For each count, Plaintiff realleges and incorporates all prior paragraphs set forth in full.


## VI  CHARGING ALLEGATION - CIVIL RIGHTS

### Count 1

### Deprivation of Constitutional Rights Under Color of Law
### 42 USC 1983
### SUPPLEMENTAL STATE CLAIMS AGAINST ALL DEFENDANTS


101.  Defendants used threats, coercion, and, injured and denied Potter equal access to remedy from her injuries.  Defendants colluded and enforced crimes against Potter.

13

102.  Potter was humiliated, harassed and punished for seeking justice in family court.

103.  Potter was denied remedy or assistance from state agencies, federal agencies.

104.  As an actual and proximate result Plaintiff has been injured.

## Count 2

### Intentional Infliction of Emotional Distress
### Extreme Breach of Duty
### Depravation of Constitutional Rights Under Color of Law
### 42 USC 1983
### Supplemental State Law Claims against Defendants

105.  In performing the acts subscribed to them, Defendants knew or should have known these would create substantial financial injury to Potter.

106.  As an actual and proximate result Plaintiff has been harmed.

## Count 3

### Culpable Breach of Duty
### Depravation of Constitutional Rights Under Color of Law
### 42 USC 1983

### Supplemental State Law Claims Against Defendants

107.  At all times pertinent hereto, DEFENDANTS, and each of them, owed one or more PROFESSIONAL DUTIES to PLAINTIFF with respect to their status as citizens, professionals, attorneys, law enforcement officers, fiduciaries, color of state law actors, judicial officers, employers/employees, and their agents, officers, affiliates, and collaborators.

108.  As an actual and proximate result Plaintiff has been harmed.

14

## Count 4
### Trespass Under Color of Law
### Depravation of Rights Under Color of Law
### 42 USC 1983
### Supplemental State Law Claims Against Defendants

109.  Each Defendant acting under color of state law is empowered and restrained
from acting by virtue from the respective constitutions, charters, articles of
incorporation, appointments, or other entity formation documents describing the
defendant's formations.

110.  In exceeding their limits of their authority, DEFENDANTS, each of them,
committed a trespass onto the property, persons, rights, privileges, rights and
immunities of the Plaintiff and are strictly liable for all harm resulting therein to
Plaintiff.

111.  As an actual and proximate result Plaintiff has been harmed.

## Count 5
### Supervisory Liability
### Depravation of Constitutional Rights Under Color of Law
### 42 USC 1983
### Supplemental State Law Claims

112.  Supervising Defendants at all times had the power to oversee, supervise,
train,  discipline one or more of the DEFENDANTS herein so as to prevent or aid
in the preventing the commission of acts of each other DEFENDANTS as alleged
herein.

113.  Supervising Defendants knew or should have known specific state and
federal laws and encouraged remedy when these violations were presented to these
Supervising Defendants.  They neglected and refused to prevent injury.

114.  Supervising DEFENDANTS after learning of the violations had a duty to investigate thoroughly, oversee, retain, discipline and/or terminate those over whom they had the power to influence or control.  Supervising Defendants failed to take any action to prevent further injury to Plaintiff.

115.  Failing to change customs, practices, or policies, or employ corrective procedures for subordinates, after having knowledge of actual or threatened constitutional injury.

116.  As an actual and proximate result, Plaintiff has been harmed.

**Count 6**
**Municipal Liability**
**Deprivation of Constitutional Rights Under Color of Law**
**42 USC 1983**
**Supplemental State Law Claims**

117.  Defendants maintained rules, policies, customs, procedures, traditions, practices, and permitted behaviors by policymakers themselves which perpetrated an intentional, reckless and deliberate indifference to the  likelihood of constitutional injury to Plaintiff.

118.  Defendants were acting pursuant to such custom and policy in committing the acts described herein and in civil rights complaints to the DOJ.

119.  As an actual and proximate result Plaintiff has been harmed.

## Count 7
### Respondeat Superior Liability
### Deprivation of Constitutional Rights Under Color of Law
### 42 USC 1983
### Supplemental State Law Claims

120.  At all times hereto, Defendants were acting as an agent or employee of each
Respondeat Superior.  As a result each of the wrongs alleged against each
Defendant is attributable to each Respondeat Superior Defendant.

## Count 8
### Deprivation of and Retaliation Under Color of Law
### 42 USC 1983
### Violation of ADA
### 42 USC 12101

121.  Defendants denied and contributed to needless court litigation, terror,
property damage, credit damage, professional damage by the violations of civil
rights and disability rights.

122.  Defendants intentionally harmed, harassed, intimidated and colluded to
further injure Plaintiff to intentionally , interfere with, obstruct  and supress
Plaintiff's right to equal access to remedy of her injuries.

123.  The ADA assures victims of domestic trauma who suffer with a disability,
equal access to all agencies.  The Defendant agencies receive Title II funding and
are required to enforce all mandates to ensure equal access to services.

124.  The Defendants actions were intended to humiliate, ignore, retaliate,
suppress, psychologically torture, demoralize, and deny access to remedy.

125.  As an actual and proximate cause, Plaintiff was harmed.

## Count 9
## Obstruction of Justice
## Deprivation of Constitutional Rights Under Color of Law
## 42 USC 1983
## Violations of ADA
## 42 USC 12101

126.  Defendants knew or should have know court rules, state laws, federal laws and chose to ignore their responsibility to private citizens.  These actions increased the trauma and injury to Potter.

127.  Specifically, Defendant Jagolinzer testifying a material fact to the tribunal. Magistrate Schearer did not access sanctions, Chief Judge did not address the complaint.  The FBA did not address the complaint.  DOJ did not investigate the civil rights complaint.

128.  Potter without legal assistance and remedy was personally injured.  Potter's property and financial assets were injured.

129.  As an actual and proximate result of Defendants actions, Plaintiff was harmed.

## Count 10
## Conspiracy to Deprive Rights and Privileges
## 42 USC 1985(3)(a)
## Against all Defendants

130.  In committing Defendant acts, Defendants culpably acted in civil conspiracy for the purpose of purposely depriving Plaintiff as a member of an equal protection class,  of equal protection rights, laws and equal privileges and immunities under the laws and retaliation, including the due administration of justice causing Plaintiff deprivation and injury therefrom.

131.  As an actual and proximate result, Plaintiff has been harmed.

## Count 11
### Failure to Prevent or Aid in Preventing Deprivation of Rights
### 42 USC 1986
### Supplemental State Law Claims

132.  Defendants had knowledge of the alleged facts herein and conspired to ignore and cause greater harm to Potter.

133.  Defendants by virtue of their relationship with each other, their authority under color of law, and professional duties, had power to prevent or aid in the preventing of further injuries.

134.  Defendants neglected or refused to exercise their power to prevent further injury and harm to Potter.

145.  As an actual and proximate result Potter has been harmed.

## Count 12
### Culpable Breach of Duty
### Deprivation of Rights Under Color of Law
### 42 USC 1983
### Supplemental State Law Claims

146.  Defendants violated all codes Of ethics and professional conduct and conspired to deprive Plaintiff of equal rights.  Defendants knew Potter was a survivor and would not have the funds to appeal detrimental court actions, violations of federal and state rules, violations of administrative rules.

147  As an actual and proximate result, Plaintiff was harmed.

## VII.  CHARGING ALLIGATIONS
## RICO

148.  By virtue of their affiliations, conspiracy, associations, and collaboration alleged herein, RICO defendants functions collectively as an alter ego vehicles of one another, facilitate and further the commercial purposes of the enterprises.

149.  Specifically, in addition to the conspiracy allegations detailed above, each defendant is liable as a principal pursuant to 18 U.S.C. § 2(a)-(b), and that each and every RICO person that is a RICO defendant is liable as a co-conspirator pursuant to 18 U.S.C. § 371.

### Rico Enterprises

150.  Each of the following configurations, for purposes of plaintiff RICO §1962(c) claims for relief, constitute an enterprise engaged in, or the activities of C which affect, interstate or international commerce as those term is defined pursuant to Title 18 United States Code §1961(4) of the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO") and *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (collectively "RICO ENTERPRISES")

### RICO Enterprise 1
### The Florida Domestic Dispute Industry Criminal Enterprise (DDICE)

151. The Florida Domestic Dispute Industry Criminal Enterprise (DDICE) consists of individual private and public professionals, professional corporations, professional membership organizations, and governmental entities engaged in that portion of "family law" practice in which two or more parties' have competing interests, or compete with the government for such interests, and is described herein as "Domestic Dispute Law." Domestic Dispute Law includes marital dissolution, parentage, child custody, child support, domestic violence, and related areas.

152. All RICO DEFENDANTS including John  DOES 1-500 and the entities with which they are associated, including every other ENTERRISE, civil and criminal CONSPIRACY constitute the DDICE. These entities, acting concert with one another, are organized and maintained by and through a consensual

20

hierarchy of agents, partners, managers, directors, officers, supervisors, agents, deputies, and/or representatives that formulate and implement policies, practices, relationships, rules, and procedures related to Domestic Dispute Law.

153.   The constituent members comprising each ENTERPRISE are engaged in a concerted campaign to extort, defraud, trick, deceive, corruptly persuade, victims, including primarily family court litigants and their children and extended families (Domestic Dispute Industry Litigants "DDIL") to exercise control over, and extract maximum value from, the target community estate ("TCE"). The TCE includes all assets of the DDIL, the labor value of the DDIL going forward, and the "custody award" value of any children of the DDIL.

154.  Further, in unfairly protecting their commercial purposes, each ENTERPRISE harasses, threatens, assaults, abuses, denigrates, impugn, and/or otherwise harm, or threaten and attempt to harm, competitors, critics, reformers, and others.

155. The ENTERPRISES operate as a "cabal," a semi private, sometimes secret, informal affiliation of entities with public presence and identity that is wholly or partially inaccurate and misleading as to the true goals, affiliations, and processes of the cabal. The ENTERPRISES achieve their respective purposes by fraudulent collusion among DDICE operators and affiliates, who in their COMMERCIAL SPEECH represent to their DDIL clients that the relationships among the DDICE members are in compliance with legal and ethical PROFESSIONAL DUTIES when in fact they are not and if a litigant proceeds to challenge this enterprise, the litigant will fail.

156. The ENTERPRISES also compete unfairly through their COMMERCIAL SPEECH by misrepresenting the legitimacy of the ENTERPRISES, by representing to DDIL that their illegal behavior is "how it is" in a "take it or leave it" breach of one or more PROFESSIONAL DUTIES.

157. The ENTERPRISES also compete unfairly within the DDI marketplace  by creating the impression that non- ENTERPRISE entities are incapable of

21

representing the interests of family law clients. In the present case, the Florida
Family Court operated to suppress all rights of the Plaintiff. Knowing Plaintiff's
financial condition and knowing Plaintiff could not operate within their enterprise.
State Officials and Federal Officials continued to support the enterprise by looking
the other way and not addressing the wrongs committed.

158. The Banking and Insurance Enterprises worked in the same manner as a
commercial enterprise to deny the rights of Plaintiff. Knowing that Plaintiff as an
abuse victim would not be able to engage in a legal battle to correct their misdeeds
and crimes.

159. The ENTERPRISES are successful due to manipulation of unique factors
characterizing the marketplace for Domestic Dispute Industry legal services.
Domestic Dispute Industry Litigants ( DDIL) are ordinarily families in crisis
seeking to resolve their personal difficulties by altering relationships. In doing so
they must often seek the involvement of the state. For contested or unusually
complex matters, DDIL enlist experts to help navigate the market. Hence, a market
for family law experts to assist in navigating the complexity and/or maximizing
outcome exists. (DDI MARKET).

160. The DDL (Divorce Dispute Litigants) view the DDI (Divorce Dispute
Industry) either as a necessary evil to be treated as a toll, or in some cases a
nefarious tool of oppression to illegally obtain wealth, power, and control at the
expense of a former loved one. If the former loved one is a victim of abuse the
process is made easy by the DDI. The customer with the cash buys all.

161. The Defendants used acts of destruction and coercion knowing Plaintiff was
a victim survivor. Defendant Merrill, Citizens, UPC, PHH, Sun Trust hid behind
numerous attorneys and state and federal agents did not use their authority to
protect Plaintiff. State agents and agencies have taken Title II funds,
misrepresenting that disabled litigants would have equal access to the Court
Enterprises. Government entities may also be an entreprise if they are a passive
instrument through which the racketeering acts are committed, advanced or

concealed. The Courts are making false promises to the communities that they will have remedy. These acts are fraudulent concealment to litigants.

162. The actions of the Defendants placed Plaintiff in further extreme duress and have resulted in continuing injuries.

163. The actions of Merrill Lynch and Citizens and UPC were intentional acts to hide and refuse to remedy conversion of insurance funds to a former spouse.

164. The actions of the attorneys in the matter were also intentional conspiracy acts to injure Plaintiff.

165. Entities accepting Title II funds are also committing conversion of federal dollars. These entities are accepting funds and are not using the funds as promised to assure that victim litigants are not injured and have equal access to the Courts.

166. State entities who do not use their authority to regulate the banking and insurance enterprises become passive instruments through which the racketeering acts are committed, advanced or concealed.

## Interstate and International Commerce of the ENTERPRISES

167. The activities of the Defendants affect interstate and international commerce as follows:
A. The Defendant entities are authorized and enforceable under federal law and entitled to full faith and credit under the multiple state laws (18 U.S.C. § 2261(a)(1), 2265) (Ex. 33);

## Longevity
168. In conducting the affairs of the ENTERPRISES, and in committing the acts, omissions, misrepresentations, and breaches referred to herein beginning as far back as 2006 and continuing up through initiation of these proceedings, RICO DEFENDANTS engaged in a pattern of racketeering activity in contravention of Title 18 United States Code § 1962(c) inasmuch as the defendant was employed by, or associated with, one or more ENTERPRISE engaged in activities that affect

federal interstate and/or foreign commerce, and conducted such multiple criminal enterprise affairs by and through a pattern of racketeering.

### ENTERPRISE Schemes and Artifice to Defraud
### Scheme and Artifice to Defraud
### Abuse of Process / Breach of Professional Duties

169.  The Florida Divorce industry was made aware that the financial statements provided were false and did not indicate the insurance proceeds.  The Court was also made aware that former husband was not using funds to protect the hurricane damaged home.  This enterprise chose to ignore these criminal acts and breached professional duties and were an abuse of process.

170.  The Circuit Civil court did not allow Plaintiff a substantial stay when her attorney withdrew from her case.  Judge Sasser told Plaintiff that she could represent herself "pro se".  Plaintiff put in her motion that she suffered a cognitive disability that prohibited her from functioning in court as a pro se litigant.

171.  State entities refused to regulate the insurance and banking industries for the illegal transfer of insurance moneys from the mortgage to the former husband.

172.  Court supervisors who knew of the breaches of rules did not regulate the enterprise

173.  Magistrate Schearer took away the right of Plaintiff in a civil lawsuit and gave settlement authority to the abuser.

174. Accountants involved presented false documents to the court which did not indicate the $42,000 dollar lien on the property.  The Divorce Industry attorneys did not check and forced Plaintiff into a contract that was a fraud.

175.  PHH converted all insurance reimbursement funds, checks that were written to Plaintiff into the account of the former husband.

176.  Insurance companies discriminated and still refused to pay benefits to Plaintiff to repair the damaged home..

### RICO §1961(5) PATTERN OF RACKETEERING ACTIVITY ALLEGATIONS
### 18 U.S.C. § 1961(5)
### COMMISSION OF RICO §1961(1)(B) RACKETEERING ACTIVITY:

177.  RICO DEFENDANTS engage in the following "racketeering activity," as that term is defined pursuant to 18 U.S.C. § 1961(c) ("RACKETEERING ACTIVITY"). RICO DEFENDANTS' RACKETEERING ACTIVITY as committing, aiding and abetting, or conspiring to commit, tens of thousands of violations of the following laws within the past ten years, including:

A. Fraud and related activity in connection with identification documents, authentication features, and information: 18 U.S.C. § 1028;
B. Mail Fraud: 18 U.S.C. § 1341
C. Wire Fraud: 18 U.S.C. § 1343
D. Bank Fraud: 18 U.S.C. § 1344
E. Intangible Personal Property Right Deprivation: Title 18 U.S.C. § 1346.
F. Influencing or injuring officer or juror generally: 18 U.S.C. § 1503;
G. Obstruction of proceedings before departments, agencies, and committees: 18 USC § 1505
H. Obstruction of Criminal Investigations: 18 U.S.C. § 1510;
I. Tampering with a witness, victim, or an informant: 18 U.S.C. § 1512;
K. Retaliating against a witness, victim, or an informant: 18 U.S.C. § 1513;
L, Peonage; obstructing enforcement: 18 U.S.C. § 1581,
M. Enticement into slavery; 18 U.S.C. § 1583;
N. Sale into involuntary servitude: 18 U.S.C. § 1584;
O. Seizure, detention, transportation or sale of slaves: 18 U.S.C. § 1585;
P. Service on vessels in slave trade: 18 U.S.C. § 1586;
Q. Possession of slaves aboard vessel: 18 U.S.C. § 1587;
R. Forced labor: 18 U.S.C. § 1589;
S. Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor: 18 U.S.C. § 1590;
T. Unlawful conduct with respect to documents in furtherance of trafficking,

25

peonage, slavery, involuntary servitude, or forced labor: 18 U.S.C. 1592;
U. Benefitting financially from peonage, slavery, and trafficking in persons: 18 U.S.C. § 1593A;
V. Conspiracy, attempt to commit acts of peonage, slavery, proscribed: 18 U.S.C. § 1594;
W. Interference with commerce by threats or violence: 18 USC § 1951;
X. Interstate and foreign travel or transportation in aid of racketeering enterprises: 18 U.S.C. § 1952

Y. Violent crimes in aid of racketeering activity: 18 U.S.C. § 1959 –
Z. Principal and Aider and Abettor, Attempt, Conspiracy Liability: Title 18 U.S.C. § 2(a) and (b).

**Racketeering Claim for Relief 1**
**18 U.S.C. §§ 1962(c), (d)**
**Frauds and Swindles**
**18 U.S.C. § 1341**

178. DEFENDANTS, having affiliated with one or more ENTERPRISE and devising or intending to devise one or more acts or ommissions for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, delivered invoices, accountings, billing statements, letters, reports, and other correspondence into the U.S. mails, email, telephone facsimile to POTTER.

179. Such use of U.S. mails, emails, facsimile, and wire occurred as follows:

Divorce attorneys Klein, Maynor, Jagolinzer enduced Potter into a litigation process and did not protect her property, causing great financial and property damage.

Insurance agencies Citizen's and UPC represented to Potter that she was not on the policy and refused to provide Potter with any documents.  Potter had to enlist the help of FDFS to obtain some records.  When the conversion was discovered in May 2011, the entities still refused to pay Potter for repairs to the damaged home.  Potter discovered in 2015 that these insurance companies according to FSS 625.9541(e)(false claim I did not show for mediation).  FSS626.9541(4)(a) et seq.

Merrill Lynch and Sun Trust  and PHH illegally converted insurance funds to the sole account of the former husband.

The divorce enterprise did not disclose these actions to Potter and upon learning of these actions did not hold former husband accountable for the fraud and swindle. Former husband's attorney misrepresented and testified to the tribunal false information.  The tribunal did not hold this attorney accountable.

State entities did not address the violations and thereby passively colluded with the fraud and swindle.
Palm Beach County Traffic court did not have the jurisdiction to punish and injure Potter.  This Court engaged in dishonest services and clerks, attorneys, supervisors ignored the illegal criminal actions of the court personnel.

Federal entities did not address violations and thereby passively colluded with the fraud and swindle.

Chase Bank provided a mortgage in Plaintiff's name for the former husband. Searching her credit report, banking report without the consent of Potter.

180. DEFENDANTS and each of them further committed fraud by virtue of use of the Internet, describing, advocating, and supporting their ENTERPRISES as legitimate and healthy practices, and failing to advise PLAINTIFF and the general public of the true nature of their ENTERPRISES.

181. As an actual and proximate result, Potter has been HARMED.

**Racketeering Claim for Relief 2**
**18 U.S.C. §§ 1962(c), (d)**
**Honest Services Fraud**
**18 U.S.C. § 1346**
**Against All RICO DEFENDANTS**

182. DEFENDANTS engaged in one or more deceptions by, through, and in conjunction with the ENTERPRISES to deprive PLAINTIFFS of the intangible right of honest services.

183. DEFENDANTS, and each of them, supported and promoted one another in perpetrating each deception, actionable fraud, bribery and/or kickbacks, wherein a quid pro quo (monetary, preferential referral, business referral, and/or some other form of benefit) was provided by the RICO defendants to persons unknown to

plaintiffs to assure that Plaintiff would be silenced, punished, discredited, and rendered ineffective in her professional and private life.

184.  Potter has been harmed as a proximate and actual result of Defendant's actions.

## Racketeering Claim for Relief 3
### 18 U.S.C. §§ 1962(c), (d)
### Obstruction of proceedings before departments, agencies, and committees:
### 18 U.S.C. § 1505, 1959
### Against all Defendants

185. DEFENDANTS corruptly and by force or threat of force, false statements, false documents endeavored to and did influence, obstruct, or impede  Potter's request for relief in state courts, state entities and federal entities.

186. In so doing, PBSO attempted to kidnap Potter, assualt with a dangerous weapon, committed assault resulting in serious psychological injury.   Plaintiffs may have conspired to do so in exchange for (i) consideration, a promise or agreement to pay, pecuniary value, from the ENTERPRISES, or (ii) the purpose of gaining entrance to or maintaining or increasing position in the ENTERPRISES.

187.  Defendants conspired for the purpose of depriving Plaintiff of her rights and property directly and indirectly  equal protection laws and equal privileges, by force, intimidation and by threat.

188.  Defendants devised a scheme to defraud Potter to obtain her money, property by means of false and fraudulent pretenses, representations, and promises.

189.  As an actual and proximate result Potter has been harmed.

## Racketeer Claim for Relief 4
## Motion for Protective Order of private property

190.  Plaintiff's property has been placed into foreclosure and Plaintiff has endured obstruction from court officers to obtain remedy by fraudulent actions.

191.  Merrill Lynch and PHH misrepresented the conversion of insurance funds to the former husband in closing documents and divorce documents.

192.  Plaintiff requests the federal court to issue a stay until these federal crimes are addressed and Potter can obtain the moneys withheld by the insurance companies and damages of these racketeering actions.

193.  The closing documents submitted by PHH and Merrill are false and caused Potter to take out a substantial loan and use all savings to repair the damaged home.

194.  Submitted in this case, is a letter from insurer UPC indicating that the damages to the home were from the intentional conduct of the former husband.

195.  FSS 626.9541 forces insurance companies the liability for intentional destruction of marital property if there is discrimination.  Discrimination has been alleged in this complaint.

196.  As a result of actual actions, Potter has been harmed.  Potter requests that this Court minimize future damages by protecting her home.

197.  Racketeering law allow for treble damages.  The damages to Plaintiff  Potter are already over one million dollars.


## VIII.  Motion for Injunctive Relief

198.  Plaintiff requests that this court order the repayment of all repairs and damages to the residential home, the insurance proceeds from Plaintiffs:  Merrill, PHH, Citizens and UPC.

199. Plaintiff requires this action to minimize her injuries. Plaintiff has presented this information and these repairs are actual damages to Potter.   As an actual and proximate result of actions by Defendants, Plaintiff has been harmed.

## IX. Motion for a stay of all state court actions against the property.

200. Plaintiff does not have funds to hire an attorney and the matter is very complicated .

201. Plaintiff is unable to present this legal action to the court without assistance from legal counsel.

202. Plaintiff is part of a protected class and requires this assistance under the ADA 42 USC 12102.

203. Plaintiff requests a stay of all court proceedings against her property. These actions are a result of the injuries Plaintiff has sustained by the acts of the Defendants.

## X. Motion for competent effective legal counsel
## Americans With Disabilities Act
## 42 USC 12102

204. Plaintiff is a member of a protective class and requires competent legal assistance. She was denied this in the lower courts and expected to competently litigate against competent attorneys. This torture has further terrorized her ability to cognitively function in the Courts.

205. Aggressive court personnel use this tactic to ensure that members of the protected classes will not obtain remedy for their injuries created by the Enterprise.

206. Plaintiff will not have equal access to the Court without this assistance.

207. Plaintiff is not able to competently represent herself in Court without this assistance.

208.  As a result of the actions of non competent, ethical and no representation, Plaintiff has been and proximate causes, Potter has been harmed.

## XI  Violations of the Fair Housing Act
## 42 USC 3604

209.  The Defendants have violated by discriminating against Potter, not providing access to insurance funds and using disparate treatment against Potter, a member of a protected class.

210. Potter seeks compensatory and punitive damages against all Defendants who have violated the Fair Housing Act.

211.  As an actual and proximate result, Potter has been harmed.

**WHEREFOR** Plaintiff requests judgment as follows:

1. An award of compensatory damages and interest thereon according to proof at trial;

2. An award of reasonable costs and expenses incurred in this action, including counsel fees and expert fees as allowable under the Title 18, 28, and 42 sections asserted;

3. Declaratory, Injunctive, and Prospective Relief as requested including injunctive remedies provided under 42 U.S.C. §§ 1983, 1988, and 18 U.S.C. §§ 1964 (a), (c), and (d);

4. That The Court issue a judgment requiring PHH, Merrill, Citizens and UPC to reimburse converted insurance funds, costs of repairs, and other expenses to mitigate further damages to property and to Plaintiff.

5. That a preliminary and permanent injunction be issued enjoining Defendants, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from making any further

misrepresentations in COMMERCIAL SPEECH as described above; and

6. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL BY DEMAND

Plaintiff hereby demands a jury trial.

DATED:  July 21, 2017

BY: _Rebecca Potter_

Rebecca Potter
1417 Michigan Drive
Lake Worth, FL  33461
Phone:  561-267-3831

## VERIFICATION

I, Plaintiff Rebecca Potter, do hereby state, declare, and affirm that I
have read Plaintiffs' Complaint and the factual statements contained therein and
know the contents thereof to be true and correct except as to those matters stated
on information and belief, which I believe to be true.
I declare under penalty of perjury of the laws of the United States that the
foregoing is true and correct.
DATED: July 21, 2017